# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1871

_____

Martha Duban; Thomas Duban

*Plaintiffs - Appellees*

v.

Waverly Sales Co.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: April 14, 2014
Filed: July 28, 2014

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Thomas and Martha Duban brought a negligence action against Waverly Sales Company (Waverly) arising out of injuries Martha sustained when she was stepped on by a horse at a Waverly draft horse auction. The district court[1] denied Waverly's

_____

[1]The Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa, to whom the case was referred for final disposition by

motion for summary judgment and renewed motion for summary judgment, finding Iowa Code § 673.2's immunity provision did not preclude Waverly's liability because an exception to the section applied. The case proceeded to trial on comparative negligence. During trial and at the close of all the evidence, Waverly moved for judgment as a matter of law based on the same immunity argument. The district court denied both motions. The jury then found Waverly partially at fault and ordered it to pay Martha Duban damages. Waverly appeals the district court's orders denying its motions for summary judgment and motions for judgment as a matter of law. We affirm.

I.

Waverly holds livestock sales at its sales barn in Waverly, Iowa. The draft horse auction is held in the arena in the main sale building. When auctions take place in the arena, temporary bleachers are set up on the floor on the north and south sides. The temporary bleachers are separated from the area of the arena floor where horses are shown by a rail in front of the bottom row of the respective bleachers. Permanent bleachers are on the upper level on the south side of the arena. The horse stable is located in the area immediately north of the arena. The cafeteria, office, and restrooms are located to the south and southwest of the arena. The auctions are open to the public, and there is no admission fee. Buyers may reserve a specific seat during the auction for five dollars. Seats not reserved, in any part of the arena, are open for use by anyone attending the auction.

During an auction, the horses are removed from the stables and lined up in the northwest alley that goes from the stables, past the west end of the north bleachers, and onto the arena floor. Horses are then driven through the middle of the arena for bidders to see. After a horse is sold, it is driven from the arena floor through the

_____

consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

northeast alley that goes from the arena floor, past the east end of the north bleachers, and back into the stables.

The Dubans attended the Waverly sale on March 25, 2010 and paid for reserved seating in the north bleacher area. During the sale, Martha left her seat in the north bleachers to go to the restroom. She exited the bleacher area by going under the rails in front of the north bleachers onto the arena floor. She then went through the northeast alley to the restroom and returned the same way. While she was returning from the restroom, she fell in the northeast alley. At the same time, horses were being led off of the arena floor through the northeast alley. As the team of horses approached the alley, an overhead door unexpectedly opened, making a loud noise and causing the horses to shy. Their handler continued to drive them through the alley, and one stepped on Martha, causing severe injuries.

The Dubans filed suit against Waverly for negligence in opening the overhead door during the sale, for failure to provide a safe exit for spectators sitting in the north bleachers, and for creating a dangerous condition on the premises by the layout of the barn.

Waverly filed a motion for summary judgment, arguing Iowa Code § 673.2, which precludes liability for a "domesticated animal activity sponsor" when the damages result from "the inherent risks of a domesticated animal activity," exempted it from liability. Waverly argued the exception in section 673.2(4), permitting a negligence action to proceed against a domesticated animal activity sponsor when the injury is caused by domesticated animal activity which "occurs in a place designated or intended by an animal activity sponsor as a place for persons who are not participants to be present" did not apply as a matter of law. The district court held there was a genuine issue of material fact regarding whether the northeast alley was "a place designated or intended by an animal activity sponsor as a place for persons

-3-

who are not participants to be present." Iowa Code § 673.2(4). Thus, the court denied the motion.

After the parties stipulated to a number of the facts, Waverly filed a renewed motion for summary judgment. The stipulations included, among other things, that during an auction, horses are led into the arena through the northwest alleyway, shown on the arena floor, and led out of the arena through the northeast alleyway; that, to access the restrooms from the north bleachers, an attendee must walk through either the northwest alleyway, the northeast alleyway, across the arena floor, or some combination of those areas; and that Martha had exited her seat in the north bleachers to use the restroom and was returning through the northeast alleyway when she was injured. With these stipulated facts, the district court determined the domesticated animal activity occurred in a place intended for persons who are not participants to be present and, as a matter of law, the exception from section 673.2(4) applied, so that Waverly could not avail itself of the immunity provision. Accordingly, the district court denied Waverly's renewed motion for summary judgment.

The case proceeded to trial on the issue of comparative negligence. During trial and again at the close of all the evidence, Waverly moved for judgment as a matter of law, arguing it was not subject to liability under section 673.2. The court denied the motions. The jury returned a verdict finding Waverly 65% at fault and Martha Duban 35% at fault, and the court entered a judgment against Waverly in the amount of $237,535. Waverly now appeals the denial of both motions for summary judgment and the denial of both motions for judgment as a matter of law, arguing the district court erred in applying Iowa Code § 673.2(4) to the facts of the case.

II.

The issue in this appeal is whether, as a matter of law, the exception from the Iowa Code applies, such that Waverly cannot take advantage of the general immunity

provided to domesticated animal activity sponsors. "Ordinarily we 'will not review a district court's denial of a motion for summary judgment after a trial on the merits.'" Keup v. Hopkins, 596 F.3d 899, 904 (8th Cir. 2010) (quoting EEOC v. Sw. Bell Tel., L.P., 550 F.3d 704, 708 (8th Cir. 2008)). Litigants must renew summary judgment arguments in Rule 50 motions to preserve their arguments for appeal. Eaddy v. Yancy, 317 F.3d 914, 916 (8th Cir. 2003). Waverly preserved its summary judgment arguments through Rule 50(a) motions for judgment as a matter of law. Because Waverly's arguments made in their Rule 50(a) motions did not concern the sufficiency of the evidence but rather the district court's interpretation of an Iowa statute, a Rule 50(b) motion post-verdict was not required to preserve the issue. Estate of Blume v. Marian Health Ctr., 516 F.3d 705, 707 (8th Cir. 2008); see also 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2540 (3d ed.) (2011) ("If there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial . . . .").

"We review de novo the district court's denial of a motion for judgment as a matter of law, using the same standards as the district court." Howard v. Mo. Bone & Joint Ctr., Inc., 615 F.3d 991, 995 (8th Cir. 2010). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The court should review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party, without making credibility determinations or weighing the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

We review de novo a district court's interpretation of a state statute. Kaibel v. Mun. Bldg. Comm'n, 742 F.3d 1065, 1067 (8th Cir. 2014). We follow Iowa's rules of statutory construction when interpreting its laws. Hortica-Florists' Mut. Ins. Co.

-5-

v. Pittman Nursery Corp., 729 F.3d 846, 852 (8th Cir. 2013). Iowa courts attempt to give effect to the general assembly's intent in enacting the law by looking at the language of the statute. Griffin Pipe Prods. Co. v. Guarino, 663 N.W.2d 862, 864-65 (Iowa 2003). The language of the statute at issue is as follows:

> A person, including a . . . domesticated animal activity sponsor . . . is not liable for the damages, injury, or death suffered by a participant or spectator resulting from the inherent risks of a domesticated animal activity.

Iowa Code § 673.2. The parties agree Waverly is a "domesticated animal activity sponsor" and the injuries suffered by Martha were caused by "inherent risks of a domesticated animal activity." Based solely on this language, Waverly is arguably immune from liability for Martha's damages. However, Iowa Code section 673.2(4) provides:

> This section shall not apply to the extent that the claim for damages, injury, or death is caused by . . . [a] domesticated animal activity which occurs in a place designated or intended by an animal activity sponsor as a place for persons who are not participants to be present.

Iowa Code § 673.2(4).

Waverly Sales's motions for judgment as a matter of law were properly denied. Unlike some of the other exceptions in the same statute, the applicability of section 673.2(4) does not turn on whether Martha Duban was a spectator or participant. Compare Iowa Code § 673.2(4), with Iowa Code § 673.2(5) (providing an exception for "activity which causes damages . . . to a *spectator* who is in a place where a reasonable person who is alert to inherent risks of domesticated animal activities would not expect a domesticated animal activity to occur" (emphasis added)); see also Griffin Pipe Products Co. v. Guarino, 663 N.W.2d 862, 865 (Iowa 2003) ("To

ascertain the meaning of the statutory language, we consider the context of the provision at issue and strive to interpret it in a manner consistent with the statute as an integrated whole."). Instead, it is the character of the location where the injury occurred that determines the applicability of the exception. Thus, the issue in this appeal is whether the northeast alley where Martha was injured was a place "designated or intended by [Waverly] as a place for persons who are not participants to be present."

The evidence demonstrates that Waverly's intent was to limit neither its sales barn, north bleacher area, nor the northeast alley restroom access way to only bidders, or "participants," in the auction. Far from being uninvited intruders, members of the general public were welcomed to attend the auction, and Waverly intended for the north bleacher area to be available for the public to sit. Ronald Dean and his brother-in-law David Beyer, co-owners of Waverly, both testified that the sales are open to the general public. Trial T. at 316, 342. Families and children are welcomed at the horse auctions, Trial T. at 316, and Waverly specifically warns in their catalog that children who do attend must be accompanied by a parent or guardian. Trial T. at 235. Dean testified that anyone can purchase a seat at the horse sale, including persons intending to bid on horses and those not intending to bid. Trial T. at 271-72. Dean also testified in his deposition that Waverly does not limit people who can sit in the north bleachers and that anyone can "sit where they want to sit." Dean Dep. at 24, 35. In fact, Dean testified that the practice of permitting buyers to purchase reserved seats began because "years back a lot of families would come out with kids and sit down in the front rows and a lot of the main buyers' . . . seats could be taken." Trial T. at 272. Though the presence of spectators was ancillary to the profitability of Waverly, the Iowa legislature has not indicated that the means of profitability of the domesticated animal activity sponsor is a consideration to whether the sponsor is protected by the statutes. Instead, it has indicated that the domesticated animal activity sponsors such as Waverly are liable for injuries occurring in areas for which

they intend those spectators and non-participants, who it welcomes into its place of business, to be present.

It is undisputed that in Waverly's sales barn at the time Martha was injured, the restrooms could not be reached from the north bleachers without first crossing through an area where horses were led. While many bidders sat in the north bleachers in order to be closer to the horses, anyone who came could sit in any seat in the arena they found to be open, including the seats in the north bleacher area. Dean testified that the seats sold at auction are "scattered on both sides" of the arena. Trial T. at 275. Therefore, persons not participating in the auction filled in the empty seats in all parts of the arena. To leave their seats and reach the restroom, everyone in the north bleachers, including persons not intending to participate in the auction, must cross through an area where domesticated animal activity—horses being driven to and from the arena floor—was occurring. Therefore, we hold that, because Waverly designated or intended the northeast alley as an area for persons who were not participants to be present, the exception from Iowa Code § 673.2(4) applies to these facts as a matter of law, and Waverly is subject to liability for Martha Duban's injuries. The motions for judgment as a matter of law were properly denied.

III.

Accordingly, we affirm. Because the trial transcript was available to the district court when it considered Waverly's 50(a) motion for judgment as a matter of law, we also deny the Duban's motion to strike the transcript from the record.

_____